Harold S. HOBSON, Plaintiff,

v.

Cyrus S. EATON

and

The Cleveland Trust Company, Exec. of Est. of Frank H. Hobson, Deceased

and

Frank H. Hobson, Jr., Individually and as Executor of Estate of Myra S. Hobson, Deceased, Defendants.

No. C63–29.

United States District Court, N. D. Ohio, E. D.

March 25, 1970.

■■■■■■■■■■■■■■■■■■■■

———◆———

Sidney D. L. Jackson, Jr., Baker, Hostetler & Patterson, Cleveland, Ohio, for plaintiff.

Wm. F. Snyder, Cleveland, Ohio, for Cyrus Eaton.

George Q. Keeley, Cleveland, Ohio, for Cleveland Trust Co.

Edward A. Eisele, Jr., Parks, Eisele, Lawrence & Bates, Cleveland, Ohio, for Frank H. Hobson, Jr., indiv., and as exec., etc.

### MEMORANDUM RE: MOTION FOR FURTHER RELIEF

KALBFLEISCH, District Judge.

Plaintiff has moved, pursuant to 28 U.S.C. § 2202, for further relief based on a declaratory judgment in plaintiff's favor rendered by the Court on June 7, 1966. The judgment has since been affirmed on appeal and, on April 4, 1969, a copy of the order from the Supreme Court of the United States denying defendant Eaton's petition for a writ of certiorari was filed in this Court.

The facts relevant to the issues here are undisputed. On October 3, 1962, the plaintiff entered into an agreement with defendants Frank H. Hobson, Jr., individually and as Executor of the Estate of Myra S. Hobson, and The Cleveland Trust Company as Executor of the Estate of Frank H. Hobson, in settlement of certain claims asserted by the plaintiff against the estate of Frank H. Hobson. By the terms of the agreement, The Cleveland Trust Company was appointed escrow agent to hold certain securities pledged by defendant Hobson to secure payment of $44,999.76 to the plaintiff in full settlement of the claims. $8,999.96 was paid to plaintiff when the agreement was executed, and the balance was to be paid in four installments of $8,999.95 on January 1 of 1963, 1964, 1965 and 1966.

Before the due date of the 1963 installment, defendant Eaton brought suit in the Common Pleas Court of Cuyahoga County claiming that he was the beneficial owner of the claims against the Frank Hobson Estate which plaintiff previously had asserted and settled. In connection with the suit, defendant Eaton obtained a temporary restraining order from the Court of Common Pleas enjoining further payments by The Cleveland Trust Company to plaintiff under the October 3, 1962, settlement agreement.

The instant action was commenced by plaintiff seeking a declaratory judgment as to the ownership of the disputed claims. This Court found in favor of plaintiff and against defendant Eaton. After the Supreme Court denied Eaton's petition for a writ of certiorari, plaintiff made demand upon The Cleveland Trust Company and Frank H. Hobson, Jr., for the balance due under the settlement agreement plus interest thereon at 6% per annum from the due date of the first installment (January 1, 1963). In that the temporary restraining order issued by the Court of Common Pleas was still in effect, payment was refused. On September 10, 1969, pursuant to a joint motion of Frank H. Hobson, Jr., and The Cleveland Trust Company, the Court of Common Pleas dissolved the restraining order and plaintiff again made demand for payment of the balance due under the agreement with interest from January 1, 1963; the demand was refused.

When the temporary restraining order was dissolved, defendants Cleveland Trust and Hobson offered to pay the principal sum still due under the settlement, but plaintiff refused to accept the principal without interest on the basis that, should he do so, his claim for interest might be waived.

The motion for further relief seeks resolution of the dispute over interest. Frank H. Hobson, Jr., joins in the motion, but claims that any interest owing to the plaintiff should be paid by defend-

ant Eaton who obtained the restraining order which prohibited timely payment of the installments provided for in the settlement agreement.

The agreement itself provides for interest at 6% per annum upon any installment not paid when due running from the due date until actual payment thereof. In addition, the plaintiff may demand payment of the entire balance with interest at 6% per annum if any installment is not paid when due.

Plaintiff's claim for interest at 6% per annum on the entire balance from the due date of the first installment is based upon the terms of the settlement agreement just set out. The argument is that none of the installments were paid, due to no fault of the plaintiff, and that he therefore is entitled to the interest agreed upon.

■ An award of interest in connection with judicial proceedings is generally within the sound discretion of the court. Abell v. Anderson, 148 F.2d 372 (6th Cir. 1945), cert. denied 326 U.S. 731, 66 S.Ct. 39, 90 L.Ed. 435. However, in Robert C. Herd & Company v. Krawill Machinery Corp., 256 F.2d 946 (4th Cir. 1958), the court stated:

"Maryland recognizes a difference in this respect between suit on a contract to pay money on a day certain, as in the case of a bill of exchange or promissory note, or a contract for the payment of interest, in which cases interest is due as a matter of right; and others in which the allowance of interest is ordinarily discretionary, 'according to the equity and justice appearing between the parties on a consideration of all the circumstances of the particular case.'" (P. 952. Citations omitted.)

The law of Ohio likewise recognizes and will enforce an express contract for interest. 31 O.Jur.2d "Interest" § 5. Consequently, the validity of plaintiff's claim for interest under the settlement agreement must be tested through application of contract law to the circumstances of this case.

■ The argument of defendants Hobson and The Cleveland Trust Company against enforcement of the contract as it relates to interest is that performance was excused during the time in which the restraining order procured by defendant Eaton was in force. The parties have not cited, nor has the Court discovered, any decision which deals squarely with the situation presented by this case. However, there are certain principles which can be applied here to resolve the matter. Professor Williston notes that the authorities are not clear as to whether the defense of impossibility of performance is applicable to situations where a judicial, executive or administrative order restrains or prevents performance of a contract. 6 Williston on Contracts § 1939 (Revised Ed., 1959; p. 5432). He states:

"Where, however, the proceedings which interfere with the performance of the promise are based on no fault of the promisor, there seems no reason why the interference should not be an excuse, unless the circumstances surrounding the formation of the contract are such as to indicate that the possibility of such interference was recognized and the risk of it assumed by the obligor." (At p. 5433.)

As to the general trend of the decisions on the question of excuse due to impossibility of performance, Williston notes:

"The law must adopt either a strict rule which will require the parties, when they form a contract, to foresee its consequences as accurately as possible, though at the expense of serious hardship to one of them if unforeseen circumstances render it impossible to perform his promise, or a rule giving an excuse under such circumstances. The early cases accepted the former alternative; the later cases tend to adopt the other." (6 Williston on Contracts § 1931, p. 5407.)

The rule in Ohio, as stated at 31 O.Jur. 2d "Interest" § 26, is as follows:

"Generally, where a sum certain is due, and by the interposition of the

law the payment thereof is prevented through no fault of the debtor, interest will not run during the time the debtor is thus prevented from making payment, because in such a case he will not be deemed to be in default." (P. 31.)

There is no claim in this case that either defendant Hobson or The Cleveland Trust Company was in any way responsible for the injunction against payment of the installments under the settlement agreement. It is the Court's opinion, under the principles set out above, that the defendants Frank H. Hobson, Jr., or The Cleveland Trust Company cannot be held in default under the agreement by not having paid the installments when due; the restraining order prevented performance of the promise and excused the obligation originally imposed thereby. It follows that the terms of the contract providing for interest upon default are not applicable since there was, under the law, no default while the restraining order was in force.

■ The fact remains, however, that the securities remained in the hands of The Cleveland Trust Company, as escrow agent, during the time execution of the agreement was enjoined. The average annual rate of return upon the securities between January 1, 1963, and December 31, 1969, was 2.525% and those proceeds have been retained in the escrow fund.

It should be noted here that the defendant Hobson deposited securities in escrow with a value in excess of the amount required to fulfill the terms of the settlement contract. Any excess remaining after execution of the agreement is to be returned to defendant Hobson; thus the effect of the judgment of this Court as to what amount is to be paid the plaintiff from the fund ultimately will be borne by defendant Hobson.

It is manifest that the escrow fund would have been reduced each time an installment was paid to the plaintiff under the agreement but for the order restraining payments. By the same token, the plaintiff had neither the use of the money which would have been paid, nor the interest which was stipulated in case default deprived him of the use of the money. Though the restraining order excused the default in paying the installments and relieved the duty to pay the agreed-upon interest, equity and justice require that defendant Hobson not profit from retention and use of funds admittedly owing to the plaintiff under the contract. Thus, the actual yield realized upon the unpaid installments must be paid over to the plaintiff to avoid what this Court views as unjust enrichment to defendant Hobson.

■ Plaintiff claims that any interest found due him should be computed on the entire unpaid balance beginning January 1, 1963. Again the claim is based upon the contract which provides that the entire amount may be called due whenever any payment is in default. It was concluded above that the temporary restraining order relieved the defendants of their duty under the contract to pay the installments when due and the stipulated interest. The acceleration provision is operative only if there is a default in making an installment payment. The principle already discussed, that there is no default where the law makes performance impossible, requires the conclusion that the plaintiff is not entitled to invoke the acceleration provision of the contract where the defendants' failure to execute the contract resulted from the restraining order.

Consequently, the amount of earnings upon the fund to be turned over to the plaintiff will be computed on a non-accelerated basis and will consist of the earnings realized upon each installment from the due date thereof until September 10, 1969—the day upon which the restraining order was dissolved.

The escrow fund is comprised of both treasury bills and stocks. The annual rate of return has varied both as to the type of security and from year to year on each type. There was no segregation within the fund as to which securities were to be used to pay a particular in-

stallment. Consequently, in computing the amount of earnings which shall be paid over to the plaintiff, the average annual rate of return upon the fund as a whole (2.525%) shall be applied to the appropriate amounts.

■ It follows from the discussion above that dissolution of the injunction removed the disability which theretofore had prevented performance according to the terms of the contract. Though the defendants made an offer of payment when the restraining order was dissolved, the money was not paid into court nor otherwise set aside for the use of the plaintiff. Instead it was retained by the escrow agent along with the rest of the fund and continued to yield earnings. It is the Court's opinion that the offer did not constitute a tender within the meaning of the law and did not suspend the obligation to pay the agreed-upon interest. Hays v. Brueggeman et al., 50 Ohio App. 352, 198 N.E. 191, 4 O. Op. 75 (1935); 31 O.Jur.2d "Interpleader" § 28.

All the installments were due when the temporary restraining order was dissolved. Thus, in addition to recouping the actual earnings realized on the fund as to the overdue installments during the term of the restraining order, plaintiff is entitled to interest at 6% per annum from September 11, 1969, on the entire principal due under the settlement agreement.

There remains the issue of whether or not defendant Eaton is liable in damages to any of the parties to this action. The operative effect of this Court's opinion thus far is to place only the plaintiff, Harold S. Hobson, in the position of having been damaged by the issuance of the temporary restraining order. But for the restraining order, the plaintiff would have earned interest at 6% per annum on the unpaid installments. Under the decision reached here, he will receive from the escrow fund only 2.525% per annum in interest for the period in which the restraining order was in force.

■ As to defendant Frank H. Hobson, Jr., though the actual yield to the escrow fund upon the unpaid installments is to be paid over to the plaintiff, the Court does not view this result as a damage assessment against defendant Hobson even though the payment will reduce the balance of the fund to be returned to defendant Hobson. He is not thereby deprived of moneys which, but for the restraining order, would have been his; rather, he is put in the position in which he would have been had the contract been performed according to its terms. As noted above, the earnings on the unpaid installments come as a windfall and must in equity be turned over to the plaintiff. Accordingly, defendant Hobson is entitled to no compensation by way of damages from defendant Eaton.

■ The issue of whether defendant Eaton is liable for any damage involves judgment as to the propriety of the issuance of the restraining order. Defendant Eaton argues that such a judgment should be made by the Court of Common Pleas. The case of Berkey Co. v. Sylvania Co., 97 Ohio St. 67, 119 N.E. 140 (1917), cited by the plaintiff, is dispositive of the question. In that case, the Supreme Court of Ohio stated that the well-established rule in Ohio is that "dissolution of an injunction is conclusive that it was wrongfully issued." (Pp. 71–72, 119 N.E. p. 141.) The court went on to hold that such dissolution is res judicata on the issue and that the propriety of the injunction could not again be tested by the unsuccessful party.

In the action for a declaratory judgment in this Court, it was determined that defendant Eaton had no interest in the claims previously asserted and settled by the plaintiff. Thus the decision of this Court is res judicata on the issue of Eaton's claim of ownership—the very claim by virtue of which he obtained the temporary restraining order. And in recognition of this Court's decision on the issue, the Court of Common Pleas

dissolved the restraining order and dismissed Eaton's petition.

Both by this Court's judgment against Eaton and by dissolution of the temporary restraining order by the Court of Common Pleas it has been finally determined that the temporary restraining order ought not to have been issued. Under the *Berkey* case, supra, Eaton has no right to litigate anew that same question. It is the Court's opinion that the restraining order ought not to have issued and that defendant Eaton must respond in damages.

■ Though the Court of Common Pleas retained jurisdiction to hear and decide the issues as to damages from wrongful issuance of the restraining order, this Court has the authority under 28 U.S.C. § 2202 to render the relief sought by the plaintiff herein. The fact that the state court might have concurrent jurisdiction to decide the issue does not detract from the statutory grant of authority to this Court. All the parties involved in the dispute over interest are before the Court and the action now taken is in furtherance of and based upon the declaratory judgment previously rendered.

Accordingly, the Court finds that plaintiff is entitled to interest at 2.525% per annum upon the amount of each installment from its due date until September 10, 1969, to be paid from the escrow fund. In addition he is entitled to interest under the settlement agreement at 6% per annum on the unpaid principal due under the agreement from September 11, 1969. Further, plaintiff is entitled to interest from defendant Eaton upon each installment running from its due date until September 10, 1969. Such interest is to be computed on a non-accelerated basis and at a rate of 3.475% per annum, i. e., the difference between the actual yield to be paid from the fund (2.525%) and the contract rate (6%).

Plaintiff is directed to prepare an order consistent with the opinion herein and to submit it to the Court for approval.