**POLYMER INDUSTRIAL PRODUCTS CO., et al., Plaintiffs,**

v.

**BRIDGESTONE/FIRESTONE, INC., Defendant.**

**No. 5:02CV640.**

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 25, 2002.

E. Jane Taylor, Guy Lammert & Towne, Akron, OH, Joseph Decker, Gefsky & Lehman, Kenneth S. Kornacki, Gefsky & Lehman, Pittsburgh, PA, for plaintiffs.

Jenny L. Sheaffer, Jones, Day, Reavis & Pogue, Cleveland, OH, John D. Goetz, Jones, Day, Reavis & Pogue, Pittsburgh, PA, John H. Hornickel, Akron, OH, Regan J. Fay, Jones, Day, Reavis & Pogue, Cleveland, OH, Robert O. Lindefjeld, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION

The subject matter of this dispute concerns Defendant's alleged infringement of Plaintiffs' patent on the design of a tire manufacturing component. This patent was the focus of a considerable amount of litigation between these same parties in a completed case before Judge Patricia A. Gaughan of this Court, styled *Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, No. 5:95CV43. In the trial of that case, the jury returned a verdict in favor of Plaintiffs for more than 2.5 million dollars. After increasing the verdict for willful infringement and awarding attorney's fees and costs, the court entered final judgment in excess of 7 million dollars. Following a lengthy, but unsuccessful appeal, Defendant paid Plaintiffs almost 8 million dollars in full satisfaction of the judgment.

As fate would have it, though, the dispute between the parties had not concluded with the satisfaction of the judgment. In the present case, the parties dispute whether the verdict represents some or all of Defendant's infringing conduct. Plaintiffs interpret the verdict as finding infringement for two types of activity, but as awarding damages for only one. Defendant contends that Plaintiffs have either been fully compensated or are preclud-ed from pursuing damages in a later filed action.

This matter is before the Court on Defendant's motion to dismiss (Doc. No. 5) and restated motion to dismiss (Doc. No. 32).[1] Plaintiffs oppose dismissal in two separate briefs (Doc. Nos.11, 35), for which Defendant has filed two separate replies (Doc. Nos.16, 37). To aid in the resolution of these motions, the Court conducted a hearing on October 15, 2002, during which the parties argued their respective positions (Doc. No. 15). Then, to determine whether the heart of the current dispute was litigated in the prior case, the Court directed the parties to supplement the record with specific filings from that case (Doc. No. 40). The parties dutifully complied (Doc. Nos.41, 42, 43, 44, 46, 48, 49, 52).

The Court's jurisdiction is based on 28 U.S.C. § 1338(a) (1998) for civil actions arising under a federal statute relating to patents.

### II. BACKGROUND

The plaintiffs in this case are Polymer Industrial Products Company and Polymer Enterprises Corporation (collectively, "Polymer"). The defendant is well-known tire manufacturer Bridgestone/Firestone ("Bridgestone"). The patent that is the subject of this suit is U.S. Patent No. 4,381,331 ("Patent").

In January 1995, Polymer filed an action against Bridgestone in the Northern District of Ohio for infringement of the Patent. Bridgestone's infringement in that action consisted of

making, using and selling a ply end turn-over bladder which possessed a fabric layer of spaced cords which had been calendered (or "skimmed") on one side only with a coating of unvulcanized uncured rubbery polymer, which cords were partially embedded in the rubbery polymer surface, the spaces between the cords be-

1. Defendant's first motion to dismiss was filed on July 16, 2001 (Doc. No. 5), before this case was transferred to this Court from the Western District of Pennsylvania. The transferor court did not rule on the initial motion. After the transfer, which was ordered on March 27, 2002, Defendant re-filed its motion to dismiss, reworking its arguments and updating legal citations from Third Circuit to Sixth Circuit law. This memorandum opinion resolves both motions.

ing free of polymer so that the cords projected above the bladder surface. (Compl.¶ 8.)

The Court may not fully understand this technical process, but in an unpublished opinion resolving an appeal in the prior litigation, the Federal Circuit provided a helpful explanation of Polymer's patented process with some specificity and with a diagram to illustrate Plaintiffs' invention. The court wrote:

> [The Patent is] directed at an improved turn-over bladder. Turn-over bladders have long been used in the manufacturing of rubber tires to "turn" a tire ply (a layer of uncured rubber) "over" a tire bead (a metal ring in the tire).
>
> . . . .
>
> In operation, the bladder . . . inflates like a balloon and rolls the ply . . . up and over the tire bead . . . . After the ply is turned over, the bladder deflates. To prevent the ply from being pulled back as the bladder deflates and thereby causing an incomplete turn-over, the bladder must be able to detach easily from, or "release," the tire ply at the location on the bladder which physically contacts the ply . . . .

Traditionally, a method of ensuring release involved painting the rubber surface of the bladder with a chlorine solution. However, this method had negative side effects, such as cracking and premature aging of the bladder. The [Patent] is directed at a bladder with exposed fabric cords on the part of the surface that comes into contact with the uncured rubber tire ply. The fabric patch tended to stick less to the uncured rubber ply than the rubber surface of a traditional turn-over bladder.

*Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, Nos. 00–1271 & 00–1299, 10 Fed.Appx. 812, 815, 2001 WL 253259, at *1 (Fed.Cir. Mar.13, 2001) (unpublished opinion).

**2.** Skim–2 bladders differed from its predecessor in that they had an additional "coat of rubber placed over the top of the fabric layer." (Compl.¶ 10.)

**3.** Bridgestone appealed on the grounds that the court erred in construing Polymer's infringement claims, instructing the jury, finding that the Patent was valid, finding that the verdict was

At trial, Polymer successfully proved to the jury that Bridgestone infringed on the Patent. Evident from the verdict form, the jury considered two types of bladders: Skim–1 and Skim–2.[2] Importantly, Polymer asserted infringement claims based only on Skim–1 bladders. Not until later in the proceedings did Polymer learn Bridgestone was manufacturing, using, and selling the second type of bladder, Skim–2. In December 1997, almost two years after the case was filed and with leave of the court, Bridgestone amended its answer to include a declaratory judgment counterclaim that its Skim–2 bladders did not infringe on the Patent. Polymer denied the allegations of this counterclaim, but did not assert an affirmative Skim–2 infringement claim (Compl.¶ 12).

At trial, the verdict form asked, "Has [Polymer] proven by a preponderance of the evidence that [Bridgestone] infringed the [Patent]?" (Def.'s Memo. in Supp. of Restated Mot. to Dismiss Ex. B at 2.) For each of three counts, the jury answered in the affirmative for Skim–1 bladders and the same for Skim–2 bladders. (Def.'s Memo. in Supp. of Restated Mot. to Dismiss Ex. B at 2.) To determine damages, the verdict form asked, "If you found the [Patent] valid and you also found infringement by [Bridgestone], what is the total amount of damages that [Polymer] is entitled to recover from [Bridgestone]?" The jury awarded Polymer $2,512,730, plus an enhancement for willful infringement. (Def.'s Memo. in Supp. of Restated Mot. to Dismiss Ex. B at 5.) The court entered final judgment in the amount of $7,366,784.99. Bridgestone's appeal[3] and Polymer's cross-appeal[4] to the Federal Circuit resulted in an affirmance of the final judgment in all respects. Bridgestone paid Polymer $7,979,530.21 in full satisfaction of the judgment.

supported by the evidence, and enhancing the damages and awarding attorney's fees. The substance of the verdict form was not raised on appeal.

**4.** Polymer cross-appealed on the ground that the court erred by declining to award miscellaneous fees and costs.

Now, in the present case, Polymer's complaint consists of one count: "Violation of 35 U.S.C. § 271—Patent Infringement." (Compl. at 5.) According to this claim, Bridgestone's liability for Skim-2 infringement is already established by the prior litigation and only the issue of damages for this infringement remains to be determined. In response, Bridgestone moves for dismissal.

## III. STANDARD OF REVIEW

Bridgestone's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). Although the merits of this case raise issues of patent law, for which the Federal Circuit case law is controlling, ordinary procedural issues are resolved under the law of the regional circuit, *see Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir.1999). Thus, the Court looks to Sixth Circuit precedent for guidance on ordinary procedural matters, but to the Federal Circuit on matters unique to patent law.

Among Defendant's arguments for dismissal is one based on the doctrine of *res judicata*. Generally, a court may not look beyond the four corners of the pleadings when resolving a motion to dismiss; otherwise, the court should convert the motion to dismiss into one for summary judgment. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir.2001). Nevertheless, dismissals based on *res judicata* have been affirmed, despite being raised by way of a 12(b)(6) motion. *See, e.g., Begala v. PNC Bank*, 214 F.3d 776, 779–80 (6th Cir.2000); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 563 (6th Cir.1995). Therefore, the Court need not convert Defendant's motion into one for summary judgment, despite relying on more than just the complaint (e.g., court documents from the prior litigation) in this memorandum opinion.

When deciding a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in a light most favorable to the plaintiff, accepting as true the factual allegations. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.2001); *Greenberg v.*

*Life Ins. Co. of Va.*, 177 F.3d 507, 514–15 (6th Cir.1999); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). Facts capable of multiple inferences must be drawn in favor of the plaintiff. *Columbia Natural Res.*, 58 F.3d at 1109. If the plaintiff can prove no set of facts upon which a claim for relief may lie, the court must dismiss the claim. *Greenberg*, 177 F.3d at 515; *Columbia Natural Res.*, 58 F.3d at 1109. The bare assertion of legal conclusions does not overcome a motion to dismiss under Rule 12(b)(6). *Columbia Natural Res.*, 58 F.3d at 1109. Under these legal standards, the Court now examines the merits of Bridgestone's motions to dismiss.

## IV. PARTIES' RESPECTIVE ARGUMENTS

Bridgestone advances two independent arguments in favor of dismissal: (1) Polymer's claim for infringement of the Skim-2 bladder was a compulsory counterclaim[5] in the prior litigation; and (2) *res judicata*.

In its primary argument, Bridgestone contends that the Federal Circuit in *Vivid Technologies*, 200 F.3d 795, has firmly established that a claim for infringement is compulsory in a declaratory judgment action of non-infringement. In its post-oral argument brief (Doc. No. 41), it cited as further support for this holding: *Davis & Cox v. Summa Corp.*, 751 F.2d 1507 (9th Cir.1985); *Pogue v. Allied Products Corp.*, No. 89 C 3548, 1989 WL 111854 (N.D.Ill. Sept.20, 1989); *U.S. Philips Corp. v. Sears Roebuck & Co.*, No. 85 C 5366, 1988 WL 64545 (N.D.Ill. June 13, 1988). Further, Bridgestone argues that a patentee is not entitled to split an infringement action against a particular defendant as to a single patent, citing *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha*, 58 F.3d 616 (Fed. Cir.1995); *General Railway Signal Co. v. Union Simplex Train Control Co.*, 23 F.Supp. 667 (D.Del.1938); *Panoulias v. National Equipment Co.*, 198 F. 493 (S.D.N.Y. 1912). Thus, when Bridgestone amended its answer to allege non-infringement with respect to the Skim-2 bladder, Polymer was required to assert a counterclaim for in-

---

**5.** The Court notes that Bridgestone's use of the term "counterclaim" may not be technically accurate and that a counterclaim to a counter-claim, or a counter-counterclaim, would be effected by simply amending the complaint.

fringement. Since Polymer did not, Bridgestone concludes that it cannot now seek damages for that claim.

In response, Polymer accuses Bridgestone of ignoring an exception to compulsory counterclaims for declaratory judgment actions. Pushing 28 U.S.C. § 2202 (1994) in place of *Vivid Technologies,* Polymer suggests that the successful party in an action for declaratory judgment may seek damages in a subsequently filed suit. In its post-oral argument brief, it distinguishes each of the cases cited by Bridgestone, and offers instead *Buckeye Community Hope Foundation v. City of Cuyahoga Falls,* 263 F.3d 627 (6th Cir.2001), and *BGB Pet Supply, Inc. v. Nutro Products, Inc.,* 124 F.3d 196 (6th Cir.1997), for an exception to the compulsory counterclaim rule. During oral arguments, Polymer raised the argument that a plaintiff ought to be the master of its case against a defendant, i.e., a defendant should not be permitted to introduce the separate issue of whether another device infringes a plaintiff's patent.

Bridgestone's secondary argument is based on *res judicata.* Regardless of whether the issue of Skim–2 damages was actually litigated in the prior action, the fact that it *could have been* raised precludes Polymer from seeking damages now. Thus, Bridgestone argues, Polymer's claim should be dismissed.

Polymer counters, invoking again an exception rooted in § 2202. *Res judicata* does not bar its claim for damages because of the supplemental nature of declaratory judgment actions. Polymer, however, is willing to concede that issue preclusion, a subset of the larger concept of *res judicata,* applies in this case. Nevertheless, because issue preclusion only bars factual or legal issues that were *actually* litigated and because the issue of damages for Skim–2 infringement was not at issue in the prior litigation, Polymer argues that it may proceed in a subsequent action, i.e., the case at bar, to recover its damages.

Finally, Bridgestone makes one additional argument that the Court will only mention briefly. This argument proposes that Skim–2 damages were included in the more than 2.5 million dollar verdict of the prior litigation. Thus, under a theory of issue preclu-

sion, Polymer may not pursue damages for Skim–2 infringement because that issue was already litigated. Polymer takes the contrary position, arguing that only the question of liability as it pertained to Bridgestone's declaratory judgment claim was submitted to the jury. Bridgestone's argument that Skim–2 damages were actually litigated in the prior action is totally without merit, as discussed first in the next section.

## V. ANALYSIS

The central issue before the Court is whether the judgment in the prior litigation obviates further proceedings in this case. The Court has carefully reviewed the parties' briefs and the oral arguments of October 15, 2002. Under the legal standard discussed above and case law described below, this case must be dismissed. Accordingly, Bridgestone's restated motion to dismiss is GRANTED; Bridgestone's initial motion to dismiss is DENIED as moot.

The Court need not resolve at this stage of the proceedings Defendant's argument that damages were included in the more than 2.5 million dollar verdict of the prior litigation. As discussed in the standard of review, *supra* Part III, the Court accepts as true the factual allegations of the complaint on a 12(b)(6) motion to dismiss. Polymer alleges that the jury award in the prior litigation did not include Skim–2 damages, and that the issue was never litigated or determined. (Compl. ¶ 23.) Thus, Bridgestone's argument to the contrary is not properly before the Court at this time, and the Court will not consider it.

Turning to consider whether Polymer's claim for Skim–2 damages was compulsory under Federal Rule of Civil Procedure 13(a), the Court examines the rule's text:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the plead-

er need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Fed.R.Civ.P. 13(a) ("Rule 13(a)").

■ Rule 13(a) was designed to encourage judicial efficiency, prevent multiple actions, and resolve in a single lawsuit all disputes arising from a common fact pattern. *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962) (per curiam). A compulsory counterclaim arises out of the same transaction or occurrence that is the subject of the opposing party's claim. *Bluegrass Hosiery, Inc. v. Speizman Indus., Inc.*, 214 F.3d 770, 772 (6th Cir.2000); *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir.1991). The failure to plead a compulsory counterclaim forever bars the claim from being brought in another action. *Bluegrass Hosiery*, 214 F.3d at 772; *Sanders*, 936 F.2d at 277.

■ From the language of this rule and the cases interpreting it, an affirmative claim for Skim–2 infringement was, in fact, compulsory. At the time Bridgestone brought its declaratory judgment action for *non-infringement*, Polymer was certainly entitled to bring an action for *infringement* against Bridgestone. Additionally, it is the nature of a declaratory action for non-infringement that it necessarily "arises out of the transaction or occurrence" of an infringement claim. Finally, the presence of third parties was not necessary for adjudication of a counterclaim; Polymer and Bridgestone were the only necessary parties. Thus, Rule 13(a) suggests a claim for infringement was compulsory.

■ Under Sixth Circuit case law for compulsory counterclaims, essentially the same rationale applies. Within this circuit, courts use the logical relationship test to determine whether a counterclaim is compulsory. *Maddox v. Kentucky Fin. Co.*, 736 F.2d 380,

382 (6th Cir.1984). Under this test, a court's inquiry is aimed at determining (1) whether issues of law and fact are common among the claims and (2) whether substantially the same evidence would be used to support or refute the claims. *Sanders*, 936 F.2d at 277.

Under this framework, it is the nature of a non-infringement action that an affirmative claim for infringement involves the same "issues of law and fact" and "the same evidence." Thus, under this test, too, Polymer's claim for infringement was compulsory. Of course, Polymer never brought such a claim. Under both the language of Rule 13(a) and the logical relationship test, Polymer may not now pursue a Skim–2 claim or the damages that would result from proving this claim.

Perhaps the final word, however, is the Federal Circuit's holding speaking directly to the issue of whether a counterclaim for infringement is compulsory in a declaratory action for non-infringement. Ordinarily, as previously mentioned, issues that are not unique to the area of law assigned exclusively to the Federal Circuit are resolved under regional circuit precedent. *Vivid Tech.*, 200 F.3d at 807. The Federal Circuit's view, however, is that declaratory actions for non-infringement presents a unique situation in patent law. The court held: "The right to file a counterclaim for patent infringement in response to a declaratory action for patent non-infringement is unique to patent law and warrants a *uniform national rule* [:] ... *when the same patent is at issue in an action for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived.*" *Id.* at 802 (emphasis added) (citing *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858–59 (Fed.Cir.1991)). Further, of the authorities examined by the court, "every court that has discussed the issue has recognized that an infringement counterclaim is compulsory in an action for declaration of non-infringement." *Id.* at 801. The Federal Circuit's position on this issue could not be clearer.

The Court views *Vivid Technologies* as dispositive of the issue in this case.[6] Poly-

---

**6.** Thus, the cases Bridgestone cites, *supra* Part IV, are instructive, but unnecessary for the

mer's affirmative claim for infringement was compulsory, given Bridgestone's claim for non-infringement. Having failed to bring an infringement action in the prior litigation, Polymer is forever barred from raising this claim again, unless, of course, Bridgestone committed additional acts of infringement. Polymer makes no such allegation.[7] Accordingly, Polymer is barred from now pursuing a claim for Skim–2 infringement or the damages that would result from successfully proving this claim. Therefore, since Skim–2 infringement is Polymer's only claim, this case must be dismissed.

While the Court views the compulsory nature of Polymer's Skim–2 infringement claim as dispositive, it also finds an *independent* basis for dismissal under the doctrine of *res judicata.* The doctrine of *res judicata* is a species different than Rule 13(a), though it also has a claim preclusive effect. This doctrine is broken down into two categories: issue preclusion and claim preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The former knocks out claims that have been *actually* litigated and decided, while the latter bars claims that *should have* been presented in a prior action. *New Hampshire v. Maine,* 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968; *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. 892.

■ In the Sixth Circuit, courts apply a four-element test that, if each is satisfied, bars a subsequent action under *res judicata:* " '(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.' " *Becherer v. Merrill Lynch,* 193 F.3d 415, 422 (6th Cir.1999) (quoting *Bittinger v. Tecumseh*

*Prods. Co.,* 123 F.3d 877, 880 (6th Cir.1997)); *see also Sanders,* 973 F.2d at 480.

As to issue preclusion, the Court previously directed the parties to supplement the record in order to consider whether such an argument had merit. The Court has reviewed, though not thoroughly, the literally thousands of pages in supplementary materials and finds that a clear-cut determination of whether the Skim–2 issue was *actually* decided is an extremely difficult, if not impossible, task. Thus, the Court is unwilling to dismiss this case based on the *res judicata* theory of issue preclusion.[8]

*Res judicata* by claim preclusion, however, presents a different story. The Federal Circuit defers to regional law when faced with an issue of claim preclusion. *Mars,* 58 F.3d at 618. Thus, the Court looks to the four element test identified above for *res judicata* in the context of claim preclusion.

■ Applying this test, the Court finds that Polymer's claim for Skim–2 damages is barred. It is undisputed that the prior litigation resulted in a final decision on the merits. It is undisputed that the final judgment came from a court of competent jurisdiction. It is further undisputed that Polymer has brought this action, which is a subsequent action between identical parties. Because Skim–2 infringement was raised in the prior action, Polymer's claim of Skim–2 damages should have also been raised in the prior action. Finally, the identical nature of Bridgestone's declaratory judgment claim in the prior litigation to Polymer's claim for damages in this litigation dictates that the causes of action are the same and that the action for damages should have been raised in the prior action. Satisfying every element of the four-part test, Bridgestone has established that *res judicata* mandates dismissal of Polymer's claim.

Court's resolution of this case.

7. During the oral arguments, Bridgestone indicated, and Polymer conceded, that Polymer has alleged no infringement occurring since the declaration of infringement in the prior litigation. (Hr'g Tr. at 5–6, 11.) Bridgestone indicated that it had stopped making Skim–2 by the time the

case went to trial (Hr'g Tr. at 6), and that the Patent has expired (Hr'g Tr. at 5).

8. Thus, although the Court directed the parties to supplement the record with materials from the prior litigation, these supplemental materials do not play a part in the Court's decision to dismiss this case.

Indeed, the way that the Court has applied *res judicata* in this case is necessary to avoid the inconsistent result Polymer seeks. To explain, Polymer would have the Court preclude Bridgestone from contesting Skim–2 liability, but does not want the Court to preclude it from pursuing Skim–2 damages. (Compl.¶ 27). In other words, on the one hand, Polymer *does not want* the Court to apply *res judicata*, i.e., the prior litigation does not preclude Polymer from pursuing Skim–2 damages in this case. On the other hand, however, Polymer *wants* the Court to apply *res judicata*, i.e., the adjudication of the prior litigation on the issue of Skim–2 liability precludes Bridgestone from contesting that liability in this case. Polymer cannot have it both ways. Rather, a uniform application of *res judicata* bars Polymer from pursuing its claim in this case.

Despite Rule 13(a), *Vivid Technologies*, and *res judicata*, Polymer argues that § 2202 saves this case from dismissal. Creating a potentially competing view, § 2202 provides, in relevant part, that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. Polymer argues that this statute creates an exception to Rule 13(a) and *res judicata*, and cites a number of cases to support this argument.[9]

For a number of reasons, the Court rejects this argument. First, every case that Polymer has cited in its brief in support of this argument pre-dates the creation of the national, bright line rule enunciated in *Vivid Technologies*. In fact, the majority of cases it cites pre-date the statutory creation of the Federal Circuit.[10] Moreover, Polymer offers no legitimate basis to distinguish *Vivid Technologies*.[11]

Second, the cases cited by Polymer are distinguishable. For example, many of the cases it cites involved parties who prevailed on a declaratory judgment claim seeking damages in further proceedings of the *same* action, not a separate, subsequent action. *See, e.g., B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed.Cir.1997); *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1435, 1437 (8th Cir. 1991); *Besler v. U.S. Dept. of Agric.*, 639 F.2d 453, 455 (8th Cir.1981); *Edward B.*

---

**9.** The cases cited by Polymer for this proposition are as follows: *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419 (Fed.Cir.1997); *BGB Pet Supply*, 124 F.3d 196; *Harborside Refrigerated Serv., Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir.1992); *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433 (8th Cir.1991); *Empire Fire & Marine Ins. Co. v. Paxton Nat'l Insur. Co.*, 880 F.2d 1291 (11th Cir.1989); *Illinois Physicians Union v. Miller*, 675 F.2d 151 (7th Cir.1982); *Besler v. U.S. Dept. of Agric.*, 639 F.2d 453 (8th Cir.1981) (per curiam); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530 (5th Cir.1978); *Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.*, 255 F.2d 518 (2d Cir.1958); *National Fire Ins. Co. of Hartford v. Bd. of Pub. Instruction of Madison County, Fla.*, 239 F.2d 370 (5th Cir.1956); *Security Ins. Co. of New Haven v. White*, 236 F.2d 215 (10th Cir.1956); *Petersime Incubator Co. v. Bundy Incubator Co.*, 135 F.2d 580 (6th Cir.1943); *U.S. Galvanizing & Plating Equip. Corp. v. Hanson–Van Winkle–Munning Co.*, 104 F.2d 856 (4th Cir.1939); *E. Edelmann & Co. v. Triple–A Specialty Co.*, 88 F.2d 852 (7th Cir.1937); *Gilliam v. Amer. Cas. Co.*, 735 F.Supp. 345 (N.D.Cal.1990); *Hobson v. Eaton*, 26 Ohio Misc. 59, 327 F.Supp. 74 (1970);

**10.** Creation of the Federal Circuit was signed into law on April 2, 1982. Federal Courts Improvement Act of 1982. Thus, *Illinois Physicians Union*, which was decided only eleven days after the statutory creation of the Federal Circuit, is the first case among those cited by Polymer, *supra* n. 9, that was decided after Congress resolved to unify, *inter alia*, the patent law.

**11.** Pre-oral arguments, the extent of Polymer's attempt to distinguish *Vivid Technologies* appears in a footnote, where Polymer states: "[T]he court ruled only on whether the district court exceeded its authority in denying defendant's counterclaim for infringement in response to a declaratory action for non-infringement." (Pl.'s Memo. in Opp'n to Def.'s Restated Mot. to Dis at 13 n. 4.) Yet, Polymer does not address the "national rule" language in *Vivid Technologies*. During oral arguments, Polymer attempts to distinguish this case as follows: "[*Vivid Technologies*], very simply ... doesn't involve—doesn't even talk about the theory under which we have filed—not the theory, the statute under which we have filed our present complaint. And that is under the Declaratory Judgment Act, legislative scheme, Section 2202 of the Declaratory Judgment Act." (Hr'g Tr. at 14.) The Court finds that these distinctions are insufficient to render *Vivid Technologies* inapplicable.

*Marks Music Corp. v. Charles K. Harris Music Publ'g Co.,* 255 F.2d 518, 520 (2d Cir.1958). The case at bar is clearly a separate, subsequently-filed case, independent of the prior litigation.

Third, as to Polymer's argument against application of Rule 13(a), the only case cited from the Federal Circuit is *B. Braun Medical,* which is among the cases that the Court just distinguished in the preceding paragraph. As to Polymer's argument against *res judicata,* Polymer cites no Sixth Circuit law to support its argument. Thus, even if the cases cited by Polymer stand for the proposition Polymer advances, these authorities are merely persuasive.

The Court has some sympathy for Polymer. In fact, the Court finds some merit in the general rule that a plaintiff should be the master of its own litigation. The case law, particularly *Vivid Technologies,* however, takes patent infringement cases outside that general rule. Therefore, the Court is unwilling to permit this case to proceed absent a ruling on appeal that indicates *Vivid Technologies* does not apply. Moreover, a compelling argument exists to suggest that Polymer was the master of its own litigation, but failed to take advantage of that role. That is, if Polymer felt that the court in the prior litigation improperly granted leave to Bridgestone to include the declaratory judgment action on Skim–2, then it could have challenged this decision in its cross-appeal to the Federal Circuit. No such challenge was raised.[12]

Finally, to the extent that an exception to *res judicata* or Rule 13(a) applies to declaratory judgment actions, the Court notes that the prior litigation not only involved a declaratory judgment of non-infringement, but an affirmative claim of infringement that resulted in a knockdown, dragged-out battle over the Patent. Thus, Polymer is grossly mistaken when it argues that allowing this case to proceed would serve the purpose of the Declaratory Judgment Act in preempting full-blown litigation. The prior action had reached, and perhaps surpassed, that stage. Rather, resolving the issue of Skim–2 damages in the prior litigation would have served the following purposes for claim preclusion doctrines (Rule 13(a), *res judicata,* and other doctrines of claim preclusion): conservation of judicial resources, prevention of multiple lawsuits or duplicitous litigation, resolution in a single action of all disputes arising from a single fact pattern, consistency of outcomes, and finality.

## VI. CONCLUSION

Polymer's failure to assert an infringement claim for Bridgestone's Skim–2 bladder in the prior litigation was a fatal omission. Under Rule 13(a) and *res judicata,* Polymer's claim for damages is barred. Therefore, the Court GRANTS Bridgestone's restated motion to dismiss and DENIES as moot Bridgestone's initial motion to dismiss.

The Court will contemporaneously publish a judgment entry consistent with the language of this opinion.

IT IS SO ORDERED.