■ PARAMOUNT PICTURES CORPORATION, Respondent, v ALLIANZ RISK TRANSFER AG et al., Appellants. [36 NYS3d 11]—

Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered September 8, 2015, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss the complaint, unanimously reversed, on the law, with costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint.

Nonparty Melrose Investors LLC (Melrose) was a special purpose vehicle created to facilitate investment in plaintiff Paramount Pictures Corporation's (Paramount) production and distribution of certain films. On July 29, 2004, prior to investing about $40.1 million in Melrose's class B notes and equity, defendants Marathon Structured Finance Fund, L.P. (Marathon) and NewStar Financial Inc. (NewStar) executed a subscription agreement, in which they, inter alia, waived all claims against, and agreed not to sue, Paramount in connection with their investment.[1]

On July 30, 2004 and October 13, 2004, respectively, defendants Munich Re Capital Markets New York, Inc. (Munich Re) and Allianz Risk Transfer AG (Allianz), entered into total swap returns pursuant to which they received all payments that their counterparties—signatories of the subscription agreement—were entitled to receive as a result of the investment.

---

**1.** The relevant contract language is as follows:"4. *General Representations and Warranties of Investor*. The Investor represents and warrants to, and agrees and covenants with the Issuer and Manager as of the date hereof, and as of each date it makes any capital contribution or funds any draws under the Notes, as follows: . . ."(s) The Investor acknowledges that none of the Relevant Parties [i.e., Paramount] has made any express or implied representation, warranty, guarantee or agreement, written or oral, to the Issuer or the Investor: . . . (iii) that the Covered Pictures or Index Pictures will perform in any particular manner, will achieve any level of return or amount of revenue or license fees or will be favorably received by exhibitors or by the public, or will be distributed in any particular manner or that any such distribution will be continuous . . . or (vi) that any Covered Picture or Index Picture will be marketed according to any particular marketing plan or distributed according to any particular release pattern (including so called 'wide releases') in the United Sates or in any other territory, other than as expressly set forth in Section 10 of the Revenue Participation Agreement. . . ."[(t)] The Investor acknowledges and agrees . . . (ii) that the Investor waives and releases all claims against Paramount, Viacom Inc. or any of their affiliates arising out of, or in connection with, the offering of the Securities. . . . The Investor waives and releases Paramount, Viacom Inc. and their affiliates from liability arising out of the matters described in paragraph (s) above [together with the above waiver language, the 'Waiver Provision'], and agrees that in no event shall it assert any claim or bring any action contradicting acknowledgments and agreements in this paragraph or in Paragraph (s) above ['Covenant Not to Sue']."

Between 2006 and 2007, Munich Re and Allianz acquired the class B notes and/or equity from these counterparties, which necessarily included the acquisition of those counterparties' obligations under the subscription agreement. Munich Re and Allianz concede that they are bound by the subscription agreement to the same extent as Marathon and NewStar.

On December 2, 2008, defendants filed suit in the United States District Court for the Southern District of New York to recoup losses on their investment. Defendants alleged in the federal action that Paramount misrepresented its intent to "pre-sell" foreign territories in distributing the films, in order to reduce its costs and minimize risk. Following the trial, the district court concluded that defendants' claims were precluded as a matter of law under the waiver provision of the subscription agreement. The district court decided the case under the waiver provision and not under the covenant not to sue, which was not raised by either party.

The district court found that there was no fraud or intent to mislead on Paramount's part, and that the evidence proved the truth of Paramount's representations. The district court also found that defendants are highly sophisticated and knew what they were doing with respect to their investment. Accordingly, the district court entered judgment in Paramount's favor.[2]

Paramount commenced the state court action asserting one cause of action, based on defendants' alleged breach of the covenant not to sue and seeking compensatory damages of not less than $8 million, which represents its attorneys' fees incurred in the federal action, plus interest. Paramount does not invoke the waiver provision. Defendants moved to dismiss the complaint on the ground that the decision of the district court is res judicata.

Under the doctrine of res judicata, a final judgment on the merits of an action by a court of competent jurisdiction "is binding upon the parties and their privies in all other actions or suits on points and matters litigated and adjudicated in the first suit or which might have been litigated therein" (*Israel v Wood Dolson Co.*, 1 NY2d 116, 118-120 [1956], citing *Good Health Dairy Prods. Corp. v Emery*, 275 NY 14, 17 [1937]). Res judicata is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" (*Allen v McCurry*, 449 US 90, 94 [1980]).

---

2. Defendants have appealed to the Second Circuit and, as of the date of their briefs, are awaiting a date for oral argument.

"Additionally, under New York's transactional analysis approach to res judicata, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*Matter of Hunter*, 4 NY3d 260, 269 [2005] [internal quotation marks and citation omitted]).

Notwithstanding the foregoing, we must consider the fact that New York is a permissive counterclaim jurisdiction (CPLR 3011). "Our permissive counterclaim rule may save from the bar of res judicata those claims for separate or different relief that could have been[,] but were not interposed in the parties' prior action. It does not, however, permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action" (*Henry Modell & Co. v Minister, Elders & Deacons of Ref. Prot. Dutch Church of City of N.Y.*, 68 NY2d 456, 462 n 2 [1986] [citations omitted]). In *Classic Autos. v Oxford Resources Corp.* (204 AD2d 209 [1st Dept 1994]), "[t]he doctrine of res judicata did not bar plaintiff's right to sue for return of its . . . payment . . . where it had failed to include a counterclaim for money damages in a prior lawsuit involving the same transaction . . . [and] allowing plaintiff's claim . . . to proceed to disposition on the merits will [not] upset any right or interest of either party" (*id.* at 209-210). While we agree with plaintiff that the relief it seeks in this action (i.e., attorneys' fees incurred in the federal action) would not "impair the rights or interests established" in the federal action, meaning that New York's permissive counterclaim rule would save it from the traditional bar of res judicata, the inquiry does not end there where the prior action was adjudicated in a compulsory counterclaim jurisdiction.

Despite the parties' arguments to the contrary, we find that plaintiff's claim for breach of the covenant not to sue is a compulsory counterclaim under the Federal Rules of Civil Procedure rule 13 (a). It existed at the time plaintiff served its answer to the complaint in the federal action and "arises out of the transaction or occurrence that is the subject matter" of defendants' federal claim(s) (Fed Rules Civ Pro rule 13 [a] [1] [A]; *see Petrie Method, Inc. v Petrie*, 1989 WL 47709, *2 [ED NY, Apr. 26, 1989, No. 88 C 3289], citing *Harris v Steinem*, 571 F2d 119, 123 [2d Cir 1978] [the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit"]). To litigate it in the federal action would not have required adding another

party over whom the district court could not acquire jurisdiction (Fed Rules Civ Pro rule 13 [a] [1] [B]). Moreover, none of the exceptions to the rule apply (*id.* rule 13 [a] [2]).

While there is no binding precedent which holds that state courts must apply Federal Rules of Civil Procedure rule 13 (a) (*accord Swergold v Cuomo*, 99 AD3d 1141, 1144 [3d Dept 2012], *lv denied* 20 NY3d 859 [2013]), in *RA Global Servs., Inc. v Avicenna Overseas Corp.* (843 F Supp 2d 386, 390 [SD NY 2012]), the district court held that "when the forum in which the prior litigation occurred was a compulsory counterclaim jurisdiction . . . notions of judicial economy and fairness require that a party be precluded from bringing all claims that it earlier had the opportunity—exercised or not—to assert as counterclaims."

Further, the Court of Appeals has provided clear guidance on this issue in *Gargiulo v Oppenheim* (63 NY2d 843, 845 [1984]), stating in dicta, "For purposes of the disposition of this appeal we assume, without deciding, that under the procedural compulsory counterclaim rule in the Federal Courts (Fed Rules Civ Pro, rule 13 [a] [in 28 USC, Appendix]) claim and issue preclusion would extend to bar the later assertion in the present State court action of a contention which could have been raised by way of a counterclaim . . . ."

Based on the foregoing, we conclude that the later assertion in a state court action of a contention that constituted a compulsory counterclaim (Fed Rules Civ Pro rule 13 [a]) in a prior federal action between the same parties is barred under the doctrine of res judicata (*see Gargiulo*, 63 NY2d at 843; *RA Global Servs., Inc. v Avicenna Overseas Corp.*, 843 F Supp 2d at 390). Concur—Mazzarelli, J.P., Manzanet-Daniels, Kapnick and Webber, JJ.