GARCIA, J.
***66 Nearly 10 years ago, following an unsuccessful investment venture, the parties began litigating their dispute in federal court. The district court entered judgment in favor of Paramount Pictures Corporation-the defendant in that action-and that judgment was affirmed on appeal. Paramount-now the plaintiff-subsequently initiated this state court action. In this appeal, defendants assert that Paramount's claim is barred by res judicata because it should have been asserted as a counterclaim in the earlier federal action. We agree.
*739 I.
In 2004, Melrose Investors LLC was formed as a special purpose vehicle to facilitate investment in certain films produced and distributed by plaintiff Paramount Pictures Corporation. Defendants Allianz Risk Transfer AG, Marathon Structured Finance Fund, L.P., Newstar Financial Inc., and Munich Re Capital Markets New York, Inc. (the investors) invested in Melrose's debt and equity.
Prior to investing, the parties exchanged and executed a number of documents, including a private placement memorandum (PPM) and a subscription agreement. The subscription agreement contained a number of representations and warranties, including, among others, a waiver provision and a covenant not to sue. Section 4(s) of the subscription agreement provided that Paramount had not "made any express or implied representation, warranty, guarantee or agreement, written or oral" to the investors regarding a number of specified matters-for instance, the manner of distribution of any films. The next paragraph, section 4(t), provided that each investor "waives and releases all claims against Paramount" or any of its affiliates "arising out of, or in connection with, the offering of the Securities," and further "waives and releases Paramount"
***67 and its affiliates from "liability arising out of the matters described in paragraph (s) above, and agrees that in no event shall it assert any claim or bring any action contradicting the acknowledgements and agreements in this paragraph or in Paragraph (s) above."
In December 2008, the investors brought suit in the District Court for the Southern District of New York, asserting claims for securities fraud (a federal question), common-law fraud (a state-law cause of action), and unjust enrichment (a state-law cause of action).[1] The investors alleged that they had relied on "Paramount's knowing misrepresentations and omissions of information material to [the investors'] decision to invest in securities." In particular, the investors claimed that Paramount had induced them to invest through "disclosures in the PPM stating that Paramount regularly employed specific risk mitigation techniques when producing and distributing films," but that, "contrary to the specific and repeated representations in the PPM," Paramount "materially altered its production and distribution plans" with regard to the Melrose investment so as to "dramatically reduce the use of a key risk mitigation technique described in the PPM." In its answer, Paramount asserted, among other things, (i) that the investors' claims were barred because, contrary to the allegations, they had "relied on documents and information apart from the PPM in making their investment decisions," and (ii) that one of those documents, the subscription agreement, contained an "express waiver" barring those claims. Paramount did not assert any counterclaims or otherwise allege that the investors had breached the covenant not to sue.
Following a bench trial, Paramount moved for entry of judgment in its favor. The district court granted Paramount's motion, finding "no basis for disregarding the [S]ubscription [A]greement" and "no legal reason why th[e] claim waiver would *740 not apply as a matter of law." Because the waiver was "valid and enforceable," the court determined that "plaintiff investors waived their claims." The court further noted: "In paragraph 4 ***68 (t) [of the subscription agreement] there is a waiver. And there is an agreement by the plaintiffs in no event to bring any claim. As I said, I do find that is binding." The investors appealed and the Second Circuit affirmed, holding that the investors "failed to establish the factual premise of their claims, and the district court correctly dismissed the complaint" ( Marathon Structured Finance Fund, LP v. Paramount Pictures Corp., 622 Fed.Appx. 85, 87 [2d Cir. 2015] ).
While the investors' appeal was pending in the Second Circuit, Paramount commenced this action in Supreme Court, alleging that the investors had breached the covenant not to sue in the subscription agreement by filing the federal action.[2] Paramount seeks compensatory damages of not less than $8 million-the attorneys' fees it allegedly incurred in the federal action, plus interest. The investors moved to dismiss the complaint, arguing, among other things, that Paramount's state court action was barred by res judicata because Paramount was required, and failed, to raise its claim as a compulsory counterclaim in the federal suit. Paramount opposed the motion.
Supreme Court denied the investors' motion to dismiss. The court "decline[d] to apply FRCP 13(a)'s compulsory counterclaim rule to support [the investors'] res judicata defense," reasoning that New York "has a permissive counterclaim rule that was enacted by the legislature," and it would "not be proper" to ignore that rule.
The Appellate Division unanimously reversed, granting the investors' motion and dismissing Paramount's complaint ( Paramount Pictures Corp. v. Allianz Risk Transfer AG, 141 A.D.3d 464, 36 N.Y.S.3d 11 [1st Dept. 2016] ). While noting that "New York's permissive counterclaim rule would save [Paramount's claim] from the traditional bar of res judicata," the court determined that "the inquiry does not end there where the prior action was adjudicated in a compulsory counterclaim jurisdiction" ( id. at 467, 36 N.Y.S.3d 11 ). The Court then determined that Paramount's claim was compulsory under rule 13(a) of the Federal Rules of Civil Procedure because "[i]t existed at the time [Paramount] served its answer to the complaint in the federal action and 'arises out of the transaction or occurrence that is the subject matter' of defendants' federal claim(s)" ( id. [citations omitted] ). Though it ***69 found no "binding precedent ... hold[ing] that state courts must apply Federal Rules of Civil Procedure rule 13(a)," the Appellate Division determined that "the later assertion in a state court action of a contention that constituted a compulsory counterclaim in a prior federal action between the same parties is barred under the doctrine of res judicata" ( id. at 468, 36 N.Y.S.3d 11 [citation omitted] ).
We granted Paramount's motion for leave to appeal ( 28 N.Y.3d 909, 2016 WL 6840114 [2016] ).
II.
The viability of Paramount's instant claim hinges on the preclusive effect of the parties' prior federal judgment. As the United States Supreme Court has instructed, "[t]he preclusive effect of a federal-court judgment" on a subsequent state court action is "determined by federal common law" ( Taylor v. Sturgell, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 [2008] ; see also Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507, 121 S.Ct. 1021, 149 L.Ed.2d 32 [2001], *741 quoting Deposit Bank of Frankfort v. Board of Councilmen of the City of Frankfort, 191 U.S. 499, 514-515, 24 S.Ct. 154, 48 L.Ed. 276 [1903] ). "For judgments in federal-question cases," the "uniform federal rules of res judicata" apply ( Taylor, 553 U.S. at 891, 128 S.Ct. 2161 [internal quotation marks and brackets omitted] ) whereas, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits" ( id. at 891 n. 4, 128 S.Ct. 2161, citing Semtek, 531 U.S. at 508, 121 S.Ct. 1021 ). The United States Supreme Court "has the last word on the claim-preclusive effect of all federal judgments" ( Semtek, 531 U.S. at 507, 121 S.Ct. 1021 ).
The Supreme Court has not squarely addressed the applicable federally prescribed rule of decision-the uniform federal rules or state preclusion law-in a case where, as here, the judgment in the parties' federal action encompassed both federal- and state-law claims.[3] Where federal and state preclusion law dictate the same result, the applicable law is irrelevant; whether analyzed under federal law or under state law ***70 (or, as the dissent puts it, analyzed "separately"), the outcome is the same. But where federal law would bar the claim and state law would not, we anticipate (and the dissent apparently agrees) that federal preclusion doctrine will supply the applicable rule of decision, barring the claim. Under either scenario, the outcome prescribed by federal law will control. And so, under either scenario, a state law analysis is unnecessary.[4]
In the absence of a federal question claim, the res judicata rules of New York-the "State in which the rendering court" sat-would ordinarily govern the preclusive effect of state-law claims ( Semtek, 531 U.S. at 508, 121 S.Ct. 1021 ). But "even when States are allowed to give federal judgments no more than the effect accorded to state judgments"-i.e., in diversity cases-"that disposition is by direction of [the United States Supreme Court], which has the last word on the claim-preclusive effect of all federal judgments" ( Semtek, 531 U.S. at 507, 121 S.Ct. 1021 [emphasis in original] ). As such, the Supreme Court has provided that state preclusion law may apply to federal diversity judgments only to the extent state law is not "incompatible with federal interests" ( id. at 509, 121 S.Ct. 1021 ).[5]
*742 Those federal interests are heightened where, as here, the federal judgment encapsulates matters of federal substantive law. In addition to the general interests underlying res judicata-judicial economy, finality, consistency, among other things-the "need for a uniform federal rule" is enhanced where federal, rather than state, substantive law is at issue ( id. at 508, 121 S.Ct. 1021 ). Given those objectives, the Supreme Court has been unequivocal: Though "no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case," the Court has "long held that States cannot give those judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes" ( id.; see also Taylor, 552 U.S. at 891, 128 S.Ct. 317 ).
***71 Accordingly, where federal preclusion principles would operate to preclude a claim-and state law principles would yield a conflicting outcome-the "federal courts' interest in the integrity of their own processes" justifies the displacement of New York law as the federally prescribed rule of decision ( Semtek, 531 U.S. at 509, 121 S.Ct. 1021 ; see also 18B Charles Alan Wright et al., Federal Practice and Procedure § 4472, Effect of State Law on Federal Res Judicata Rules [2d ed 2011] ). Indeed, federal courts generally apply "federal preclusion law" where, as here, "the prior case involved both federal and state substantive law" ( Lucas v. JBS Plainwell, Inc., 2012 WL 12854880, *5 [W.D. Mich., March 8, 2012, 1:11-cv-302] ; see also Chudacoff v. University Medical Center, 525 Fed.Appx. 530, 531 [9th Cir. 2013] [applying federal preclusion law to a judgment rendered by a federal court exercising federal question and supplemental jurisdiction]; In re Residential Capital, LLC, 507 B.R. 477, 490 [S.D. N.Y.2014] [same]; In re Zaharescu, 2013 WL 3762285, *2 [C.D. Cal., July 22, 2013, CV 12-9767-CAS] [same] ). For these reasons, federal preclusion law governs our analysis.
III.
In federal court, rule 13 of the Federal Rules of Civil Procedure governs the pleading requirements for counterclaims, requiring a defendant to plead certain related claims. Specifically, rule 13(a) provides, in relevant part, that a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" ( Fed Rules Civ Pro rule 13 [a][1][A] ). Although the text of rule 13(a) does not explain the consequences for failure to plead a compulsory counterclaim, "virtually all courts agree that a party who fails to plead a compulsory counterclaim cannot raise that claim in a subsequent action" in federal court (Michael D. Conway, Narrowing the Scope of rule 13[a], 60 U Chi L Rev 141, 141 [1993] ; Charles Alan Wright et al., Compulsory Counterclaims-Effect of Failing to Plead a Compulsory Counterclaim, 6 Fed Prac & Proc Juris § 1417 [3d ed 2010] ). The rule itself and its accompanying Advisory Committee Notes are "silent on whether rule 13(a) was intended to be a rule of administration for the federal courts or was expected to have wider application"-namely, in state court actions (Wright, 6 Fed Prac & Proc Juris § 1417 ).
***72 The investors do not contend that rule 13(a), by itself, operates to bar unasserted counterclaims raised subsequently in state court. And for good reason. At minimum, "it would be peculiar to find a rule *743 governing the effect that must be accorded federal judgments by other courts ensconced in rules governing the internal procedures of the rendering court" ( Semtek, 531 U.S. at 503, 121 S.Ct. 1021 ). And at worst, that interpretation would "violate the jurisdictional limitation of the Rules Enabling Act" ( id. ; Wright, 6 Fed Prac & Proc Juris § 1417 [noting, with regard to rule 13, that "the rulemakers decided that it was beyond the scope of the federal rules to regulate the effect of a judgment"] )-that the Federal Rules of Civil Procedure may not "abridge, enlarge or modify any substantive right" ( 28 USC § 2072 [b] ). Instead, the investors contend that principles of res judicata act independently to bar Paramount's claim.
A.
The preclusive effect of a judgment is determined by two related but distinct concepts-issue preclusion and claim preclusion-which collectively comprise the doctrine of "res judicata" (see Taylor, 553 U.S. at 892, 128 S.Ct. 2161 ). Issue preclusion, also known as collateral estoppel, bars the relitigation of "an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment" ( New Hampshire v. Maine, 532 U.S. 742, 748-749, 121 S.Ct. 1808, 149 L.Ed.2d 968 [2001] ; see also Restatement [Second] of Judgments § 27 ). As a result, the determination of an essential issue is binding in a subsequent action, even if it recurs in the context of a different claim ( Taylor, 553 U.S. at 892, 128 S.Ct. 2161 ).
While issue preclusion applies only to issues actually litigated, claim preclusion (sometimes used interchangeably with "res judicata") more broadly bars the parties or their privies from relitigating issues that were or could have been raised in that action ( Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 [1877] ). The doctrine "encompasses the law of merger and bar"-it precludes the relitigation of all claims falling within the scope of the judgment, regardless of whether or not those claims were in fact litigated ( Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 [1984] ; Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 285 [2d Cir. 2000] ; Wright, 6 Fed Prac & Proc Juris § 1417 ). As such, claim preclusion serves to bar not only "every matter which was offered and received to sustain or defeat the claim or demand," but also "any other admissible matter which might have been offered for that purpose" ( ***73 Nevada v. United States, 463 U.S. 110, 129-130, 103 S.Ct. 2906, 77 L.Ed.2d 509 [1983], citing Cromwell, 94 U.S. at 352 ). In other words, claim preclusion may "foreclos [e] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit" ( Migra, 465 U.S. at 77 n. 1, 104 S.Ct. 892 ).
Collectively, these doctrines serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" ( Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 [1980] ). By promoting consolidation, res judicata shields litigants from undue harassment and protects against the substantial time and expense associated with needless and repetitive litigation ( Taylor, 553 U.S. at 892, 128 S.Ct. 2161 ; see also Allan D. Vestal, Res Judicata/Preclusion by Judgment: The Law Applied in Federal Courts, 66 Mich. L Rev 1723, 1723 [1968] ). The reduction of duplicative proceedings similarly furthers the goals of convenience, efficiency and judicial economy-the same trial court presides over unified discovery, all relevant motions, and a single trial ( Allen, 449 U.S. at 94, 101 S.Ct. 411 ; Conway, *744 60 U Chi L Rev at 156 ). Res judicata also preserves the integrity of the courts by fostering finality and minimizing the risk of conflicting judgments, which serve only to undermine public confidence in the judicial process (see Nevada, 463 U.S. at 128-129, 103 S.Ct. 2906 ; Vestal, 66 Mich. L Rev at 1723; Conway, 60 U Chi L Rev at 162 ).
B.
Invoking the doctrine of claim preclusion, the investors contend that Paramount's covenant not to sue claim should have been litigated in the prior federal action, and therefore Paramount's state court action is barred.[6] To establish claim preclusion, a party must show: (1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in the two actions (see Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 323-324, 91 S.Ct. 1434, 28 L.Ed.2d 788 [1971] ; Allen, 449 U.S. at 94, 101 S.Ct. 411 ; Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345-346 [2d Cir. 1995] ). The sole issue in this case is whether the claim to be litigated is "the same" as the claims previously litigated by the parties.
The Supreme Court has not articulated a precise test for determining whether there is an identity of claims for purposes ***74 of claim preclusion, and lower courts do not apply a uniform standard (see John F. Wagner, Jr., Proper Test to Determine Identity of Claims for Purposes of Claim Preclusion by Res Judicata under Federal Law, 82 A.L.R. Fed. 829, § 2[a]; Nevada, 463 U.S. at 130 n. 12, 131, 103 S.Ct. 2906 ; I.A.M. National Pension Fund, Benefit Plan A v. Industrial Gear Manufacturing Co., 723 F.2d 944, 947-948 [D. D.C. 1983] ). Prior to the adoption of the Federal Rules of Civil Procedure, courts embraced "[t]he old theory of narrowing the issue down ... to one single limited matter," thereby "forcing the parties to bring separate actions" (American Bar Association, Federal Rules of Civil Procedure and Proceedings of the Institute on Federal Rules, 247 [1938]; Williamson v. Columbia Gas & Elec. Corp., 186 F.2d 464, 469 [3d Cir. 1950] ). Claims were litigated in a fragmented manner, favoring narrow and discrete issues over more comprehensive proceedings (American Bar Assn, Proceedings at 247; Restatement [Second] of Judgments § 24, Comment a ). Procedural constraints, including inflexible pleading and joinder rules, reflected the common-law attitude opposing (and in some cases, preventing) the consolidation of claims ( Restatement [Second] of Judgments § 24, Comment a ; id. § 22, Comment a ; Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 144, 795 S.E.2d 887, 891 [. 2017] ; Williamson, 186 F.2d at 469 ). Underlying this policy was, in part, the notion that "[a] defendant should not be required to assert his claim in the forum or the proceeding chosen by the plaintiff but should be allowed to bring suit at a time and place of his own selection" ( Restatement [Second] of Judgments § 22, Comment a ); though antithetical to the policies underlying res judicata, a defendant's autonomy was thought to outweigh countervailing interests in convenience, efficiency, and judicial economy.
The common law doctrine of claim preclusion mirrored these limitations. For purposes of res judicata, case law focused on the precise "cause of action" asserted in the two suits (see United States v. Memphis Cotton Oil Co., 288 U.S. 62, 67-68, 53 S.Ct. 278, 77 L.Ed. 619 [1933] ; see also *745 In re General adjudication of All Rights to Use Water in the Gila River System and Source, 212 Ariz. 64, 70, 127 P.3d 882, 888 [ 2006] ) and, guided by the aim of pleading-"to frame one single legal issue"-that phrase came to have "a very narrow meaning" ( Williamson, 186 F.2d at 469 ). Indeed, "in the days when civil procedure still bore the imprint of the forms of action and the division between ***75 law and equity, the courts were prone to associate claim with a single theory of recovery, so that, with respect to one transaction, a plaintiff might have as many claims as there were theories of the substantive law upon which he could seek relief against the defendant" ( Restatement [Second] of Judgments § 24, Comment a ). One version of the test, for instance, examined the "primary right" of the plaintiff that had allegedly been infringed, and scrutinized whether the two actions involved an alleged infringement of that same legal right by the same wrongful act or omission (see Wagner, 82 A.L.R. Fed. 829, § 2[a]; Restatement [Second] of Judgments § 24, Comment a ; Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 71 L.Ed. 1069 [1927] ). Another test focused on whether the same evidence that was considered in the first judgment would sustain the second (see Nevada, 463 U.S. at 130 n. 12, 103 S.Ct. 2906 ; see also Wagner, 82 A.L.R. Fed. 829, § 2[a]; Restatement of Judgments § 61 [1942] ). These narrow conceptions of a "claim" limited the effects of res judicata, enabling piecemeal litigation with minimal risk of preclusion (see Williamson, 186 F.2d at 469 ; Restatement [Second] of Judgments § 24, Comment a ).
But "[d]efinitions of what constitutes the 'same cause of action' " for purposes of claim preclusion "have not remained static over time" ( Nevada, 463 U.S. at 130, 103 S.Ct. 2906 [citations omitted] ). Increasingly, modern practice has placed a premium on the policies underlying res judicata-notions of efficiency, finality, and judicial economy, among other things. The earlier common law rule favoring claim isolation and party autonomy has been gradually supplanted by a new "general philosophy"-one of "limiting the number of law suits possible over one controversy" (American Bar Assn, Proceedings at 247). In response to these evolving procedural ideas, courts have broadened preclusion principles to "apply in contexts not formerly recognized at common law" ( Allen, 449 U.S. at 94, 101 S.Ct. 411 ), and "[t]he scope of claims barred has expanded" (Conway, 60 U Chi L Rev at 145 ). In turn, modern conceptions of res judicata embrace a broadened notion of the scope of a "claim" (see Williamson, 186 F.2d at 469 ["(T)he meaning of 'cause of action' for res judicata purposes is much broader today than it was earlier."]; see also Vestal, 66 Mich. L Rev at 1723-1724 [noting that the "increase in the use of the principle of res judicata/preclusion in federal courts" is embodied in, among other ***76 things, "(t)he expansion of the scope of the definition of 'claim' in connection with ... claim preclusion"]; Restatement [Second] of Judgments § 24, Comment a ["The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights."] ).
This progression is also reflected in the concomitant evolution of modern procedural rules-namely, pleading and joinder reforms-that similarly operate to urge consolidation of related claims into a single action (American Bar Assn, Proceedings at 247; Restatement [Second] of Judgments § 24, Comment a ; Conway, 60 U Chi L Rev at 141 ; Williamson, 186 F.2d at 469-470 ;
*746 Funny Guy, 293 Va. at 146, 795 S.E.2d at 892 ). rule 13, for instance, was designed "to flush out all possible counterclaims early in the litigation; in other words 'to prevent multiplicity of actions and to achieve a just resolution in a single lawsuit of all disputes arising out of common matters' " ( Cyclops Corp. v. Fischbach & Moore, Inc., 71 F.R.D. 616, 619 [W.D. Pa. 1976], citing 3 Moore's Federal Practice ¶ 13.12[1] [1974] ). Though it may be "a species different" than res judicata, rule 13"also has a claim preclusive effect" in federal court, providing an "independent basis" to "bar [ ] claims that should have been presented in a prior action" ( Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc., 211 F.R.D. 312, 318 [N.D. Ohio 2002], affd 347 F.3d 935 [Fed Cir. 2003 en banc] ; Conway, 60 U Chi L Rev at 141, 157-158 ; Wright et al., 6 Fed Prac & Proc Juris § 1417 ). In other words, rule 13(a) operates as a procedural shortcut-an expedient employed by federal courts to achieve the preclusive ends of res judicata ( Polymer, 211 F.R.D. at 318 ; Conway, 60 U Chi L Rev at 141 ; see also Trustees of New York City District Council of Carpenters Pension Fund v. MI Installers & Furniture Services, Inc., 2013 WL 1385791, *8 [S.D. N.Y., March 28, 2013, No. 12 Civ. 2362(VM) ] [noting that the court's res judicata analysis hinged on "the same reason" as its compulsory counterclaim assessment] ). Or, viewed another way, as modern procedural devices broadened the scope of claims that may (and in some cases, must ) be litigated, the scope of claims covered by res judicata-those claims that should have been litigated-has symmetrically widened (see ***77 Restatement [Second] of Judgments § 24, Comment a ; see also Funny Guy, 293 Va. at 146, 795 S.E.2d at 892 [citation and quotation marks omitted] ).
C.
This modern notion of res judicata has called for a broadened standard for determining whether two claims-or, as in this case, a claim and counterclaim-are the "same" for purposes of claim preclusion. Though courts tasked with applying the "uniform federal rules of res judicata" employ a variety of formulations for purposes of defining a "claim," the clear trend has been towards the adoption of a transactional analysis (see Wagner, 82 A.L.R. Fed. 829, § 2[a]; see also Nevada, 463 U.S. at 130 n. 12, 103 S.Ct. 2906 ; Conway, 60 U Chi L Rev at 145 n 23 ; Restatement [Second] of Judgments § 24, Comment a ).[7]
*747 ***78 As articulated by the Second Circuit, "[w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first" ( Monahan, 214 F.3d at 285 ; see also Ross, 486 F.3d at 283 ). "To ascertain whether two actions spring from the same 'transaction' or 'claim,' " courts look to "whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage' " ( Pike, 266 F.3d at 91 ). Put differently, "the question is whether the claim was sufficiently related to the claims ... in the first proceeding that it should have been asserted in that proceeding" ( id. ).
The approach embodied in the Second Restatement similarly provides that "[a] defendant who may interpose a claim as a counterclaim in an action but fails to do so" is precluded from relitigating that claims if "(a) [t]he counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or (b) [t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action" ( Restatement [Second] of Judgments § 22 ). By incorporating compulsory counterclaims statutes and rules-adopted in all federal jurisdictions, and in the vast majority of states-the Restatement employs the transactional approach embodied in those statutes and rules to broaden the scope of a "cause of action" to which res judicata applies (see Wright, 6 Fed Prac & Proc Juris § 1417 ; see also Restatement [Second] of Judgments § 22 ).
In a "modern procedural system"-which "permits the presentation in [one] action of all material relevant to the transaction"-"[t]he transaction is the basis of the litigative unit or entity which may not be split," irrespective of the variant legal theories available ( Restatement [Second] of Judgments § 24, ***79 Comment a [emphasis added] ). Under this approach, the law of claim preclusion reflects the expectation that "parties who are given the capacity to present their 'entire controversies' shall in fact do so" (id.; Williamson, 186 F.2d at 469 ).
IV.
Under any transactional analysis, Paramount's covenant not to sue claim is sufficiently related to the investors' claims in the federal case so as to preclude its assertion in a subsequent action ( Pike, 266 F.3d at 91 ). In their federal suit, the investors predominantly alleged that, through material misrepresentations and omissions, Paramount induced them to invest in the Melrose investment. These *748 fraud-type allegations necessarily implicate the negotiations surrounding the Melrose investment-namely, the representations, warranties, and disclosures made by Paramount in connection with the transaction. The investors' claims therefore required the district court to consider the scope and validity of the various documents exchanged and agreements executed in connection with the Melrose investment, including the PPM (cited frequently in the investors' federal complaint) and, as relevant here, the subscription agreement.
Indeed, in its ruling, the district court reached issues that would likely prove dispositive to Paramount's instant claim: the court noted that the waiver provision of the subscription agreement also contained "an agreement by the plaintiffs in no event to bring any claim"-i.e., a covenant not to sue-and held that those provisions were "binding" on the investors. This overlap of essential facts is exemplified most poignantly by Paramount's offensive assertion of collateral estoppel in the instant case with respect to the district court's factual and legal findings concerning the subscription agreement.
At bottom, Paramount's covenant not to sue claim is based on the "same transaction" as the federal action (the Melrose investment); it involves much of the "same evidence" (the subscription agreement and surrounding negotiations); and its essential facts (the scope and validity of the subscription agreement's provisions) were present in the first action (see Monahan, 214 F.3d at 285 ). Unlike in cases involving malicious prosecution or other similar claims, Paramount did not "depend upon the judgment" in the federal action in order to allege a breach of the covenant not to sue ( ***80 Mount Everest Ski Shops, Inc. v. Nordica USA, Inc., 736 F.Supp. 523, 525 [D. Vt. 1989] ; Mali v. Federal Ins. Co., 720 F.3d 387, 395 [2d Cir. 2013] ). Nor did its claim depend on events subsequent to the filing of the investors' complaint (see Harris v. Steinem, 571 F.2d 119, 123 [2d Cir. 1978] ; see also Star Mark Management, 2009 WL 2922851, at *7-*9 ; Chrysler Corp. v. Fedders Corp., 540 F.Supp. 706, 713 n. 2 [S.D. N.Y.1982] ). Rather, the covenant not to sue claim accrued immediately when the investors filed suit in the federal action and could be resolved upon consideration of nearly identical factual and legal issues.[8] Accordingly, because it should have been asserted in the parties' federal action, Paramount's claim is barred by res judicata.
V.
Pursuant to federal principles of claim preclusion-the applicable rules of decision in this case ( *749 Semtek, 531 U.S. at 507, 121 S.Ct. 1021 )-Paramount's covenant not to sue claim is transactionally related to the investors' claims in the federal case, amounting to the same "claim" for purposes of res judicata. As such, Paramount's claim should have been asserted in the parties' prior federal action. Because it was not, it is now barred.
The order, insofar as appealed from, should be affirmed, with costs.

The district court exercised federal question and supplemental jurisdiction over the subject matter of the action pursuant to 28 USC §§ 1331 and 1367 (see Allianz Risk Transfer v. Paramount Pictures Corp., 2010 WL 1253957, *6, 2010 U.S. Dist LEXIS 32218, *15 [S.D.N.Y., March 31, 2010, 08 Civ. 10420(TPG) ] ). The court noted that it "also" had original jurisdiction pursuant to 28 USC § 1332 because the action "is between citizens of different states and/or foreign states and the amount in controversy exceeds $ 75,000 exclusive of interest and costs" (id. ).

Paramount has since settled with defendant Marathon Structured Finance Fund, L.P.

Given the Supreme Court's express directive-that "[t]he preclusive effect of a federal-court judgment is determined by federal common law" (Taylor, 553 U.S. at 891, 128 S.Ct. 2161 [emphasis added] )-the applicable law is not an "open question" (concurring op. at 81, 73 N.Y.S.3d at 484, 96 N.E.3d at 749). To the extent any issue remains "open," it is only the federally prescribed rule of decision in a "mixed" jurisdiction case; in determining the preclusive effect of a federal judgment, our starting point is not, under any circumstances, "New York State's res judicata rules" (concurring op. at 82, 73 N.Y.S.3d at 485, 96 N.E.3d at 750). Nor can we ignore binding Supreme Court precedent simply because the parties purportedly "agree" that we should-even if applying the wrong law would somehow produce the right result (concurring op. at 82, 73 N.Y.S.3d at 485, 96 N.E.3d at 749-50).

Accordingly, we do not decide-even "implicitly" (dissenting op. at 93, 73 N.Y.S.3d at 493, 96 N.E.3d at 757)-whether, under New York state res judicata principles, the claim "is barred" (concurring op. at 81, 73 N.Y.S.3d at 484, 96 N.E.3d at 749) or "should proceed" (dissenting op. at 93, 73 N.Y.S.3d at 493, 96 N.E.3d at 757).

The Supreme Court has not yet determined whether its Semtek concession-"allow[ing]" state res judicata principles to determine the preclusive effect of pure diversity judgments-applies in the context of counterclaims. And there is reason to believe it may not: Even where state preclusion law would allow an unasserted counterclaim to proceed, the defendant in a state court action that was preceded by a federal diversity action will often be able to remove the case to federal court, and rule 13(a) would then operate to "bar[ ] litigants from separately filing what should have been a compulsory counterclaim" (dissenting op. at 89, 73 N.Y.S.3d at 490, 96 N.E.3d at 755).

While collateral estoppel is not at issue in this appeal, Paramount contends that, assuming its claim is not precluded, the investors will be collaterally estopped from challenging the district court's factual and legal findings with respect to the subscription agreement.

As the dissent notes, federal courts generally need not address the issue of res judicata in the context of counterclaims, as rule 13(a) will ordinarily operate in federal court to bar an unasserted compulsory counterclaim (dissenting op. at 94-95, 73 N.Y.S.3d at 494-95, 96 N.E.3d at 758-59). That said, those courts that have reached the issue have made clear that res judicata provides an "independent basis" to bar a counterclaim that should have been asserted in a prior action (Polymer, 211 F.R.D. at 318 [dismissing the plaintiff's claim pursuant to rule 13(a) and "find(ing) an independent basis for dismissal under the doctrine of res judicata "] [emphasis in original], affd 347 F.3d 935 [Fed Cir. 2003 en banc] ; see also Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211, 486 F.3d 279, 283 [7th Cir. 2007] [the plaintiff's claim was barred pursuant to "(t)he federal law of claim preclusion," not rule 13(a), because it should have been asserted as a counterclaim in the parties' earlier litigation]; Pike v. Freeman, 266 F.3d 78, 90-91 [2d Cir. 2001] [precluding a previously-unasserted counterclaim under "the doctrine of res judicata"]; Trustees of New York City District Council, 2013 WL 1385791, at *4-*8 [separately analyzing the plaintiff's unasserted counterclaim under rule 13(a) and "(t)he doctrine of res judicata," and concluding that, "for the same reasons th(e) action is not a compulsory counterclaim, it is not barred by res judicata"]; Cascio v. Nettles, 2011 WL 3847337, *6-*8 [S.D. N.Y., Aug. 30, 2011. No. 8:09-CV-1128 (GTS/DRH) ] [dismissing the plaintiff's claims because they were "compulsory counterclaims" in the parties' prior federal action and "on the alternative ground of res judicata"]; Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 2009 WL 2922851, *7-*9 [E.D. N.Y., Sept. 8, 2009, No. 07-CV-3208 (KAM)(SMG) ] [holding that the plaintiff's claims were barred "(u)nder the doctrine of res judicata or claim preclusion" because they should have been raised as a counterclaim in the prior action] ). In Pike v. Freeman, for instance, then-Judge Sotomayor assessed whether the defendant's claim was barred under "the doctrine of res judicata"-not rule 13(a) -where the defendant failed to raise it as a counterclaim in the parties' prior arbitral proceeding (266 F.3d at 90-91 ). Although the court ultimately determined that the claim was not barred because it was "not based on the same transaction" as the plaintiff's claims, the court made clear that res judicata applies to a counterclaim that should have been previously raised even where, as in Pike,rule 13(a) did not apply in the prior proceeding (id. at 90-92 ).

The dissent notes an apparent absence of authority assessing whether a contractual covenant not to sue must be filed as a compulsory counterclaim (dissenting op. at 98 n. 9, 73 N.Y.S.3d at 497 n. 9, 96 N.E.3d at 761-62 n. 9). This shortage is unsurprising: In the vast majority of cases, the counterclaiming parties apparently assume that these claims are compulsory and opt to plead them (see Taupita Investment, Ltd. v. Benny Ping Wing Leung, 2017 WL 3600422, *7 [S.D. N.Y., Aug. 17, 2017, 14 Civ. 9739(PAE) ] [breach of covenant not to sue brought as a counterclaim]; Reach Music Pub., Inc. v. Warner/Chappell Music, Inc., 2014 WL 5861984, *1 [S.D. N.Y., Nov. 10, 2014, No. 09 Civ. 5590(KBF) ] [same]; Kamfar v. New York Restaurant Group, Inc., 347 F.Supp.2d 38, 42 [S.D. N.Y.2004] [same]; Wallingford Shopping, LLC v. Lowe's Home Centers, Inc., 2011 WL 96373, *6 [SD NY, Feb. 5, 2001, No. 98 Civ. 8463(AGS) ] [same]; Society for Advancement of Educ., Inc. v. Gannett Co., Inc., 1999 WL 33023, *1 [S.D. N.Y., Jan. 21, 1999, No. 98 Civ. 2135(LMM) ] [same]; Cefali v. Buffalo Brass Co., Inc., 748 F.Supp. 1011, 1013 [W.D. N.Y.1990] [same]; Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 586 F.Supp. 1286, 1287 [S.D. N.Y.1984] [same]; Artvale, Inc. v. Rugby Fabrics Corp., 232 F.Supp. 814, 819 [S.D. N.Y.1964] [same]; see also Wright, 6 Fed Prac & Proc Juris § 1417 ).